Eric G. Benson, Esq. (No. 10414)
Email: eric@pbp.law
Brett R. Parkinson, Esq. (No. 10310)
Email: brett@pbp.law
**PARKINSON BENSON POTTER**
2750 Rasmussen Road, Suite H-107
Park City, UT 84098
Phone: (415) 534-7970
Fax: (530) 207-8340

*Attorneys for Defendant Daniel J. Brett*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>Daniel J. Brett,<br><br>Defendant. | **DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**<br><br>Case No. 2:24-cr-00037<br><br>Honorable Judge David Sam |

Defendant Daniel J. Brett ("Mr. Brett"), by and through undersigned counsel, respectfully submits this Position with Respect to Sentencing Factors for the Court's consideration at his sentencing hearing set for December 2, 2024.

As explained more fully below, Mr. Brett requests that this Court vary from the advisory United States Sentencing Guidelines Manual ("Guidelines") range and impose a sentence of probation in this case. Given the totality of the circumstances in this case, such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a).

1

## BACKGROUND

### I.     Daniel Brett

Mr. Brett is a 69-year-old father, stepfather, brother, husband, and grandfather.  In his earlier years, he earned a Doctorate in Electrical Engineering and served in the United States Air Force, performing various roles, including United States Air Force Academy officer and professor, and becoming a Major by the time he was 44.  After leaving the military, he worked as an aerospace engineer for Northrup Grumman for 18 years, working on prestigious programs such as the nation's strategic missile defense effort, before retiring in 2017.

Mr. Brett got married at the age of 23, and the couple had a son.  Twenty-seven years later, his wife died of colon cancer, and Mr. Brett was left a single father.  After grieving the loss of his wife, Mr. Brett then met Laurie and remarried, becoming a stepfather to Laurie's two sons.  Mr. Brett loved becoming a father-figure to his new stepsons, and cherished spending time with them just as he did with his own son and his many nieces and nephews from his six tight-knit siblings. A family man through and through, he was thrilled to become a grandfather last year, now spending as much time as he can with his grandson.  Aside from his family, Mr. Brett's other passion is his faith.  He is heavily involved in his Christian community, attending Bible study meetings and looking for opportunities to volunteer in his community as often as possible.  He and his wife donate to youth education programs and strive to live the Christian values they strongly believe.

### II.    The Instant Offense

After his retirement, Mr. Brett was approached by a member of his church community, Kevin Peterson, in 2018 about converting the historic Broadway Hotel in Tooele, Utah, into an apartment building.  Without any real background in property development, Mr. Brett found Mr.

Peterson's proposition to be intriguing and agreed to invest with Mr. Peterson and his company, American West Investments, LLC.   At all times, Mr. Peterson was the company's managing partner and in charge of all major decisions on the project, but Mr. Brett was doing his best to learn as he went.   Before they could move forward with the remodel, however, the COVID pandemic hit in spring 2020, and the hotel burned down in a fire set by arsonists in July 2020, completely derailing their plans.   They were now left with a literal giant mess to clean up, with no incoming revenue in sight.   American West Investments hired a crew to come in and demolish the ruins left after the fire during the week of December 9, 2020.   Despite the age of the hotel, no arrangements were made for proper handling or removal of asbestos-containing materials.   To compound things, five months after the demolition, Mr. Peterson abruptly passed, leaving Mr. Brett to handle the ill-fated project alone with very little direction.   A retired engineer, Mr. Brett did not personally have anywhere near sufficient funds to continue work on the project, having found himself at the center of a money pit and at the helm of a project well outside of his wheelhouse.   It was a mess on multiple levels.

The demolished building stayed essentially as it was until the Environmental Protection Agency ("EPA") eventually conducted a clean-up effort in February 2022.   While Mr. Brett had relied on Mr. Peterson's guidance for the business-related decisions, Mr. Brett was aware there was a probability that the historic hotel contained asbestos, and he should have looked into the issue further before any work was done at the site, and for this negligence, he finds himself before this Court in the instant matter.   Mr. Brett was charged with three counts of Clean Air Act violations pursuant to 42 U.S.C. § 7413(c)(l) and 42 U.S.C. § 7413(c)(5) in February 2024.   Seven months later, Mr. Brett accepted responsibility for his negligent actions and pled guilty to one

count of 42 U.S.C. § 7413(c)(4), a lesser-included misdemeanor offense, for negligent release of

a hazardous substance (asbestos) into the air based on his negligent behavior in attempting to clean

up the debris pile before the EPA came in and finished the job.  Mr. Brett regrets that he did not

take more care in the decision-making process after the fire and that necessary protocols were not

put in place and understands how this conduct is negligent in the eyes of the law.

## PROCEDURAL POSTURE

On September 16, 2024, Mr. Brett pled guilty to negligently releasing a hazardous pollutant

into the air in violation of 42 U.S.C. § 7413(c)(4)—a misdemeanor.  Mr. Brett is set for sentencing

before this Court on December 2, 2024.  In preparation for sentencing, the United States Probation

Office prepared a Presentence Investigation Report ("PSR").  In the PSR, the Probation Office

calculated a total offense level of 22 and a criminal history category of I, resulting in a sentencing

range under the United States Sentencing Guidelines (the "Guidelines") of 41 to 51 months,

however, because he pled to a misdemeanor, the Guidelines term is reduced to 12 months.  (PSR

at ¶ 69.)  Finding that he posed no threat to the community or flight risk, Magistrate Judge Cecilia

Romero released Mr. Brett on his own cognizance and without supervision on March 14, 2024,

and he has been fully cooperative and compliant since.  For the reasons outlined herein, Mr. Brett

respectfully requests that the Court vary from the advisory Guidelines and sentence him to a term

of probation.

## OBJECTION TO PSR GUIDELINES CALCULATION

Mr. Brett objects to the 9-level sentencing enhancement imposed pursuant to U.S.S.G. §

2Q1.2(b)(2) in paragraphs 27-28 of the PSR.[1]  As noted, above, Mr. Brett has pleaded to the

---

[1] Of note, there are no applicable sentencing guidelines for the lesser-included misdemeanor offense of the Clean
Air Act violation of 42 U.S.C. § 7413(c)(5).  Rather, the guidelines contemplate the "knowing endangerment"

lesser-included negligent endangerment violation of the Clean Air Act—a misdemeanor.  As there are no applicable sentencing guidelines for the lesser-included misdemeanor offense, it is unclear if these same enhancements are applicable in the first place.  Further, the 9-level enhancement only applies "[i]If the offense resulted in a *substantial likelihood* of death or serious bodily injury."  U.S.S.G. § 2Q1.2(b)(2) (emphasis added).  The facts of this case demonstrate that no such substantial likelihood exists here.

As noted in the PSR, the demolition by L&C Excavating took place between December 9-14, 2020—a period of less than a week.[2]  The employee at issue was manning a water truck, spraying water while the bulldozer operator was demolishing the building.  The employee was not conducting the demolition by hand or wandering through asbestos-filled areas for days or weeks on end.  He was in a truck for a short period of time, thus minimizing his exposure, and ultimately his risk of any injury.  Further, as wetting asbestos reduces its risk, the employee was engaged in a job that inherently minimized his exposure.  Medical research makes clear that amount and severity of exposure is highly relevant to the potential risk of future asbestos-related injury.  (*See*, *e.g.*, https://www.asbestos.com/exposure/short-term/: "in general, the health risk from short-term asbestos exposure is low.")  Indeed, research shows that only up to 20% of those exposed to even decent amounts of asbestos end up experiencing a related illness down the road. (*See* https://my.clevelandclinic.org/health/diseases/22245-asbestosis (accessed Nov. 6, 2024)). This is far from a "substantial likelihood."  Based on the facts of the case a 9-level enhancement is not warranted.

---

felony violation to which Mr. Brett did not plead guilty to.  Accordingly, it is unclear if these same enhancements are applicable.

[2] Information from Mr. Brett indicates that the job may have actually only lasted 2-3 days.

## DISCUSSION

I.    **Statutory Framework**

As this Court is well aware, in *United States v. Booker*, the United States Supreme Court struck down the provisions of the Federal Sentencing Act that made the federal sentencing guidelines mandatory. 543 U.S. 220, 250-60 (2005). *Booker* reminds us that we are sentencing an individual and not a crime. *See*, *e.g.*, *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) ("Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" (internal citation omitted)); *Koon v. United States*, 518 U.S. 81, 113 (1996) (noting courts should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). "The statute, as modified by *Booker*, contains an overarching provision instructing courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal citation omitted); *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (indicating that a district court may consider arguments that the Guidelines sentence fails to properly reflect section 3553(a) considerations). "A sentence is substantively unreasonable if the length of the sentence is unreasonable given the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008).

Importantly, "[a] sentencing judge has greater familiarity with the case and the defendant before it than [an appellate] court or the Sentencing Commission and is therefore 'in a superior position to find facts and judge their import under §3553(a) in the individual case.'" *United States v. Munoz-Nava*, 524 F.3d 1137, 1148 (10th Cir. 2008) (internal citation omitted).

Accordingly, under the current legal landscape, the Guidelines calculation is merely one of several factors to consider under 18 U.S.C. § 3553(a).  The Court must also consider the nature of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, and the need to provide restitution.  *See* 18 U.S.C. § 3553(a).

Taking into account Mr. Brett's personal characteristics, lack of criminal history, and community and family support, Mr. Brett respectfully requests that this Court vary from the advisory Guidelines and impose a sentence of probation.  Such a sentence would allow Mr. Brett to continue to be a contributing member of his community and church, and to care for his wife, children, and grandson.  Probation would still add significant restraints on his freedom and provide just punishment and is more than sufficient given the nature of the misdemeanor conviction for negligence.

## II.      The 18 U.S.C. § 3553(a) Factors Warrant a Variance.

Although a court begins its sentencing determination by considering the Guidelines, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original) (per curiam).  "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter."  *Id.* at 351.  Accordingly, the relevant factors identified in 18 U.S.C. § 3553(a) are discussed below.

/ / /

/ / /

**A.      The Nature and Circumstances of the Offense**

As explained in detail above, after retiring in 2017, a member of his church convinced Mr. Brett to invest in a real estate development project with him.  After a few weeks, Mr. Brett realized the scope of the project was much larger than anything he'd anticipated.  The project was quickly derailed when an unexpected fire destroyed the historic hotel that they were planning to remodel, and arrangements were made to have the burned building's remains demolished, not taking the time and care to address the dormant asbestos in the century-old building.  Five months later, things went from bad to worse when the managing partner of the company died unexpectedly, leaving Mr. Brett at the helm without any real experience in real estate development and without the funds to finish what they had started.  Mr. Brett regrets ever getting involved in the project in the first place given the financial and emotional toll it has taken on him and his family.  Nonetheless he understands his actions were negligent in that he didn't exercise more care in making decisions related to the demolition considering the high likelihood of asbestos in the building.  He now stands before this Court accepting full responsibility for his negligence.

**B.      Mr. Brett's History and Characteristics**

Mr. Brett is a good person who is completely devoted to his family and his community. He has no criminal history and has spent his life devoted to education, military service, church, and family.  The following excerpts from letters written by his family, friends, and members and leaders of his church congregation demonstrate his fundamental character:

- "During the past 14 years, I have known Dan Brett to be an honest, trustworthy, compassionate friend. I have always known him to be kind, empathetic, courageous and a man of great integrity."  (Letter from Mary Ellen Peterson, attached hereto as Exhibit A).

- "As the eldest of seven siblings, Dan has always been the rock of our family, providing guidance, support, and leadership that shaped us all. I feel fortunate to have grown up with someone as kind, intelligent, and humble as Dan…His dedication to his family reflects his character—he is someone who consistently puts the needs of others first. What I admire most about Dan is his respect for others. He listens carefully, values different perspectives, and never dismisses anyone's thoughts, no matter their background or knowledge. This, along with his integrity and compassion, makes him the type of person anyone would be proud to know."  (Letter from Susan Brett, Daniel's sister, attached hereto as Exhibit B).

- Daniel "expresses a strong sense of duty to God, family, and our country (he served in the military as an officer).  He has demonstrated integrity and outstanding moral character within our [Bible Study] group and community.  When my husband passed away, Dan and his wife supported me in so many ways."  (Letter from Patricia Russell, attached hereto as Exhibit C).

- "When we met I was divorced with 2 boys ages 15 and 17.  We married and Dan came alongside my boys and helped them become productive men.  Because of this, I will be forever grateful to him…Dan is an amazing husband.  He is very kind and patient and loving to me."  (Letter from Laurie Brett, Daniel's wife, attached hereto as Exhibit D).

- "Dan is an amicable soul who soberly considers his words and deeds. I've talked with him on several occasions about this unfortunate oversight on his part and would like to state, for the record and with God as my witness, that whatever act or action he allowed in this situation over which you preside was not from malice or intentionality but more from an unfortunate oversight."  (Letter from Pastor Shawn McCraney, attached hereto as Exhibit E).

- "Dan is a great stepdad and grandfather to our son.  He is always there for us and loves his family…He is a wonderful husband to Laurie, they really love each other and love spending time together.  They are very involved in our son's life and are the best grandparents.  They babysit him all the time."  (Letter from Bryan and Erin Van Horssen, Daniel's stepson and daughter-in-law, attached hereto as Exhibit F).

- "In my experience, he is, in fact, the very person who could drop everything to help a friend…Dan and I and a couple others get together on occasion to discuss current events, religious topics, entertainment, education, the weather, and more. We often focus on things that might be beneficial to other people and during those meetings I have learned that Dan doesn't just talk about things that will help people but he and his wife put their time and money toward those things, an example being youth education."  (Letter from David Hust, attached hereto as Exhibit G).

- "After our USAF Careers, Dan & I both worked for Northrop Grumman… Dan was the Systems Engineer on our most important program in support of the nation's strategic missile defense effort. On one occasion, Dan refused to sign off on the final data despite tremendous pressure by Senior Management to do so. He identified anomalous behavior in spite of the fact that all parameters passed the required specifications…After bringing this discovery to the attention of our customer (including the Missile Defense Agency), the equipment in question was not delivered to the government and they were extremely grateful that we did not deliver equipment that could have had catastrophic consequences in actual operation… Dan showed great courage and integrity in doing what he knew to be the right thing even when it brought tremendous scrutiny and initial criticism his way." (Letter from Jim Bloom, attached hereto as Exhibit H).

Mr. Brett's life has been turned upside down by the instant proceedings. He has always led a law-abiding life full of service to his country and to his fellow man, and it has been hard to process the case he now faces. At no point did he expect to be in this position. His life has been dedicated to helping others and caring for his family, and that desire has only increased now with the added perspective this case has given him. The negligent conduct underlying this case is truly an aberration in an otherwise exemplary life, and Mr. Brett asks to be given the chance to prove that to the Court.

## C.     The Kinds of Sentences Available

There is no mandatory minimum sentence at issue here. Accordingly, the Court has at its disposal every sentencing option in implementing a just sentence for Mr. Brett, including a period of probation with little or no restrictions on his liberty. *See*, *e.g.*, *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) ("District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2—ones that can range from non-custodial sentences to the statutory maximum—bearing in mind that they are dealing with an

eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.").

The Supreme Court has recognized that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty . . . Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking."  *Gall v. United States*, 552 U.S. 38, 48 (2007) (citing USSG § 5B1.3).

## D.    The Need for the Sentence Imposed

Section 3553 instructs the Court to consider the need for the sentence imposed and to evaluate whether the Guidelines sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public from further crimes, and provides the defendant with the needed educational or vocational training, medical care, and other correctional treatment in an effective manner.  In this case, these factors weigh heavily in favor of a sentence of probation.

To be sure, Mr. Brett has already paid a significant price for his conduct.  Facing federal chargers for the last several months has led to immense self-reflection and humility as he has had to share this with his friends and loved ones.  He has also dealt with parallel civil proceedings with the EPA, and paid restitution to the demolition crew worker who was potentially exposed to asbestos during the fire clean-up.  Further, a period of incarceration is not necessary for Mr. Brett

11

to learn and grow from his mistakes.  He has already been working to better himself and continue his service to his community and loved ones whose full support he is fortunate to have.

Mr. Brett is retired with absolutely no plans to undertake any other business ventures ever again.  As Judge Romero recognized at Mr. Brett's initial appearance when she released him on his own recognizance without restrictions (a rare occurrence to say the least), Mr. Brett is not a danger to his community.  He is a 69-year-old dad, husband, and grandfather, who got involved in a bad venture and made a negligent mistake as he faced cleaning up a burned down building with insufficient funds.  Any period of incarceration is absolutely unwarranted and would only needlessly waste taxpayer money.

### E.      The Need to Provide Restitution

Mr. Brett has already paid $20,000 in restitution to the EPA in civil proceedings and will pay the remaining $20,000 owed at sentencing.  (*See* PSR at ¶¶ 20-21.)

## III.    The Totality of the Circumstances Warrants a Sentence of Probation.

The sentencing factors above, when considered together, justify a variance from the Guidelines.  Many courts, including the Tenth Circuit, recognize that a variance may be appropriate based on a combination of factors.  *See*, *e.g.*, *United States v. Pacheco-Soto*, 386 F. Supp. 2d 1198, 1203 (D.N.M. 2005) ("[D]istrict courts must move beyond rote adherence to the Guidelines and towards a more substantive and holistic analysis of whether a Guidelines sentence truly will achieve the sentencing purposes set forth in Section 3553(a) in each individual case.").  Mr. Brett is a good man who was talked into working on a project that was rife with issues from the beginning.  He was negligent in his cleanup of the hotel's debris pile after the building was set on fire by arsonists.  This conduct, while negligent under the law, does

not warrant a sentence in prison for any length of time.  A sentence of probation with limited conditions is more than sufficient to promote respect for the law and to reflect the seriousness of the misdemeanor offense.

**IV.      Mr. Brett Has No Ability to Pay a Fine.**

Mr. Brett requests that the Court follow the recommendation of the government and not impose any additional fine in this case.  (*See* PSR ¶ 67.)

<u>**CONCLUSION**</u>

For the reasons stated above, Mr. Brett hereby respectfully requests that the Court impose a sentence of probation.  Such a sentence is reasonable, but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted this 22nd day of November 2024.

**PARKINSON BENSON POTTER**

Eric G. Benson, Esq.
Brett R. Parkinson, Esq.
*Attorneys for Defendant Daniel J. Brett*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 22nd day of November 2024, I electronically submitted the

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS [FILED**

**UNDER SEAL]** to the Clerk of the Court using the EC/ECF system, which sent electronic

notification of such filing to the following counsel of record in this case:

Ruth Hackford-Peer, Esq.
Assistant United States Attorney
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, UT 84111-2176
Ruth.hackford-peer@usdoj.gov


   */s/ Jennifer Courtney*
Jennifer Courtney

# EXHIBIT A

68 Maximo Way
Palm Desert, CA 92260

23 August 2024

To the Honorable Judge David Sam

During the past 14 years, I have known Dan Brett to be an honest, trustworthy, compassionate friend. I have always known him to be kind, empathetic, courageous and a man of great integrity. While I lived in Salt Lake City, I became acquainted with Dan and his wife Lori, and we shared many of the same values and attended the same church, Mt. Olympus Presbyterian Church. Now that I live in Palm Desert, I have stayed in touch with Dan and have found him to always offer helpful and astute advice as part of our friendship.

Respectfully yours,


Mary Ellen Peterson

# EXHIBIT B

**Susan Brett**
16005 E. Princeton Pl.
Aurora, CO, 80013
September 7th, 2024


The Honorable David Sam,

I am writing this letter in support of my brother, Daniel Brett. As the eldest of seven siblings, Dan has always been the rock of our family, providing guidance, support, and leadership that shaped us all. I feel fortunate to have grown up with someone as kind, intelligent, and humble as Dan.

One of the best examples of his selflessness was when my children were young. Dan spent countless hours in my backyard, single-handedly digging and prepping the yard so my kids could have a swimming pool. He didn't have to do that, but he took it upon himself because he cared about giving them something special. His generosity didn't stop there. When I bought a brand-new car that began having issues, no one at the dealership could figure out how to fix it—but Dan did. His intelligence and determination to help his family always stand out to me.

Dan's leadership in our family was evident in countless ways. He helped me with my math homework with incredible patience, even though I struggled a lot with it. His guidance helped me understand things I couldn't have grasped on my own. It's no surprise that he later earned a Ph.D. in Electrical Engineering. Despite his intelligence, Dan has always remained humble. He never flaunted his achievements but instead used his knowledge to help others.

As a father to his son, Ben, and a husband to Laurie, Dan is equally dedicated. He's a supportive father and a loyal partner to Laurie. His dedication to his family reflects his character—he is someone who consistently puts the needs of others first.

What I admire most about Dan is his respect for others. He listens carefully, values different perspectives, and never dismisses anyone's thoughts, no matter their background or knowledge. This, along with his integrity and compassion, makes him the type of person anyone would be proud to know.

In conclusion, I can confidently say that Dan is a person of strong moral character.Thank you for your time, and if you need any additional information, I am happy to provide further details.


Sincerely,
Susan Brett
suebrett65@outlook.com
(303) 565- 6344

# EXHIBIT C

Patricia C. Russell
4070 S. Evelyn Drive
Salt Lake City, UT 84124
prussell@xmission.com
(801) 274-3083

August 25, 2024

Honorable David Sam
Frank E. Moss United States Courthouse
350 S. Main Street, Suite #148
Salt Lake City, UT 84101

Dear Judge Sam,

I am writing to provide a character reference for my friend, Dan Brett, whom I have known for the past three years. We attend a Bible Study group together where he has proven to be an excellent scholar. I gained respect for him, not only for his insight and serious consideration of the text, but also in the way he values and engages others in cohesive discussion.

When we have engaged in conversation about his personal life, he always shows empathy and kindness. He also expresses a strong sense of duty to God, family and our country (he served in the military as an officer). He has demonstrated integrity and outstanding moral character within our group and community. When my husband passed away, Dan and his wife supported me in so many ways.

I am honored to provide this character reference for Dan Brett. I sincerely hope that my words convey the depth of his sincerity, honesty, and the positive impact he has on those around him.

Thank you for considering my perspective.

Sincerely,

*Patricia C. Russell*

Patricia C. Russell



# EXHIBIT D

Letter of character reference for Dan Brett                    Aug 22, 2024

Dear Judge Sam,

My name is Laurie Brett and I am Dan's wife of 18 years. Dan's first wife Donna passed away in 2005 after a 3 year bout with cancer. When we met I was divorced with 2 boys ages 15 and 17. We married and Dan came alongside my boys and helped them become productive men. Because of this I will be forever grateful to him. He encouraged my oldest son Bryan to get a degree in mechanical engineering. Dan helped him get an internship at Northrop Grumman (where Dan was working) and he still works there today.

Dan is an amazing husband. He is very kind and patient and loving to me. He knows how to get me in a good mood when I'm trying to be in a bad mood. We both are the oldest siblings from large families. Dan has become a great part of my family and everyone loves him.

Even though Dan is very smart (Engineering PhD) he can relate and talk to anyone. He is a good listener and helps out friends whenever he can. Dan was trying to help a friend when he got into all this trouble. We both are strong Christians and know that God will work all things out for his glory and our good.

I hope this letter conveys that Dan is a wonderful man whom I love very much.

Thanks.

*Laurie Brett*

Laurie Brett

# EXHIBIT E

To the Honorable Judge David Sam
with regard to the character of Dan Brett

August 21 2024

Honorable Judge Sam,

My name is Shawn McCraney, and I have served the community of Salt Lake City in the capacity of senior pastor since 2006.  We are a non-denominational organization that welcomes all people of every creed and disposition and Dan Brett is one such individual who I've come to know personally over the last six or seven years.

I freely lend my personal attestation to the quality of his person and character as a citizen, husband, father and man of faith.

Dan is an amicable soul who soberly considers his words and deeds.  I've talked with him on several occasions about this unfortunate oversight on his part and would like to state, for the record and with God as my witness, that whatever act or action he allowed in this situation over which you preside was not from malice or intentionality but more from an unfortunate oversight.

I trust Dan as a man, friend and citizen, and do not believe he intentionally broke the law.  I add my written voice to testify to his upstanding character and pray for your wise discernment in this matter.

Sincerely,

Shawn McCraney, Pastor
CAMPUS Church

# EXHIBIT F

September 4, 2024

Dear Judge Sam,

We are Dan Brett's step kids Bryan and Erin Van Horssen.

Dan is a great step dad and grandfather to our son. He is always there for us and loves his family.

We asked Dan to marry us in 2015 because he knew us so well and we felt comfortable with him. He wrote a beautiful message and prayer. We will always remember it.

He is a wonderful husband to Laurie, they really love each other and love spending time together. They are very involved in our son's life and are the best grandparents. They babysit him all the time.

Dan is very a smart engineer with a PhD and he was an impactful mentor to Bryan. Because of Dan, Bryan went to school for engineering then he helped Bryan get a job at Northrop Grumman where they worked together for 6 years.

He also let us rent his home during college and was extremely supportive of our schooling and future. We are forever grateful to him.

Thank you for taking our letter into consideration, we hope it conveys how important Dan is to us.

Bryan and Erin Van Horssen

# EXHIBIT G

David Hust
1540 South 1000 East
Salt Lake City, UT  84105
TEL (801) 580-8499
Email: dave@humicgreen.com

Character Reference Letter regarding Dan Brett

To the Honorable David Sam,

This is a letter of character reference regarding Dan Brett.  My name is David Hust and I have known Dan for a few years.  As we became acquainted with each other we discovered interests we shared ranging from technologies and philosophies to science and mechanics.  Engaging in conversation on these and other topics has resulted in us becoming good friends.

Dan is not the kind of person who would drop everything to help out a friend.  In my experience he is, in fact, the very person who would drop everything to help a friend.  Case in point: I wanted to go to Provo to pick up some things I needed for a vehicle I am restoring and at the last-minute I thought I might need some help.  I called Dan and he literally stopped what he was doing to take a drive that he knew would take hours out of his day to help me.

Another time I needed use of a truck, which I don't have but Dan does, and again Dan offered to help out.  When I tried to compensate him for his time and the fuel used, he adamantly refused to accept it.

I am an owner and the managing member of HumicGreen, LLC.  We provide soil amendment products that help improve various soils that work to promote plant growth, improve water efficiency, fertilizer efficiency and reduce downstream pollution from excess fertilizers and animal waste.  When Dan learned about some of the environmental benefits of one of the products that would help his specific soil, he was eager to get some for his home.  I gifted him some in return for the kindness he has shown me.

Dan and I and a couple of others get together on occasion to discuss current events, religious topics, entertainment, education, the weather, and more.  We often focus on things that might be beneficial to other people and during those meetings I have learned that Dan doesn't just talk about things that will help people but he and his wife put their time and money toward those things, an example being youth education.

A while back, before I knew Dan, he ended up on the wrong end of a bad business relationship.  I'm not sure if it is that relationship or if it is an innate sense, but he seems to be keenly aware of the financial station in other peoples lives.  Even though he has helped some who have had an outstretched hand, I have also seen him give assistance to a stranger where others might not even recognize that the person was going through a difficult time.

Often small actions speak volumes about someone's character.  There was a time when a young man who was having a difficult time communicating came up and started to talk to a group of us.  Dan took the lead.  He did not try to brush the man off at all.  He had the utmost patience with him, never spoke down to him and did a fantastic job communicating with him on the man's level.  The man walked away quite pleased that he had engaged so well in the conversation.

These are some of the things I have seen while being around Dan.  What I have never seen is behavior that is belittling or disparaging to an individual.  He sees that each person is a unique individual and treats them as such.

My time and experience while being around Dan for the period that I have known him illustrate to me that he is of very high character and from my point of view, if more would emulate such behavior it would be beneficial to us all.

Sincerely,

David Hust

# EXHIBIT H

TO: The Honorable David Sam                                                                 30 Aug 24

FROM: Jim Bloom

I have known Dan Brett for over 25 years.  We have worked together, vacationed together, and have continued to spend time together over that entire time, even after I retired and moved from Utah to Arizona late last year.  I know him and his character very well.

As USAF officers, we were both on the faculty in the same department at the USAF Academy where he was a daily role model (both in and out of uniform) for the future military leaders of our country.  He lived the character-centered motto of the organization: "We will not lie, steal, or cheat, nor tolerate among us anyone who does. Furthermore, I resolve to do my duty and to live honorably, (so help me God)".

A great example of Dan's integrity was when, as a USAF Academy Professor, he encountered what appeared to be one of his cadet students cheating. Dan pursued the matter to gather all the facts which confirmed his suspicion and ultimately resulted in the expulsion of the cadet, sending a strong message regarding his own integrity and his courage to do the right thing, even though it meant ending the military career of the cadet.

After our USAF Careers, Dan & I both worked for Northrop Grumman.  We worked together daily.  Dan was the Systems Engineer on our most important program in support of the nation's strategic missile defense effort.  I was his manager. Dan was responsible for the hands-on testing of our systems and for the data review and final technical approval to ship the final product which would become the brains of our nation's missile defense system.  The program was under tremendous pressure from the highest levels of our company's leadership to deliver our product ASAP as we were on the critical path for the entire program (meaning any delays in our deliveries would delay the entire national priority program; we were pacing the entire program).  On one occasion, Dan refused to sign off on the final data despite tremendous pressure by Senior Management to do so.  He identified anomalous behavior in spite of the fact that all parameters passed the required specifications. So technically, at face value, everything looked OK, but Dan had the insight to recognize that something was not right even though all parameters were in-spec. He was actually questioning the specifications and the possibility that they could be faulty. After bringing this discovery to the attention of our customer (including the Missile Defense Agency), the equipment in question was not delivered to the government and they were extremely grateful that we did not deliver equipment that could have had catastrophic consequences in actual operation.  The specifications were updated by the customer to make sure future equipment with similar behavior would clearly fail the specification. The interceptor using our product could one day be required to destroy an incoming adversary's nuclear warhead while still outside the atmosphere.  If the interceptor fails its mission, then literally millions of Americans could die. Dan showed great courage and integrity in doing what he knew to be the right thing even when it brought tremendous scrutiny and initial criticism his way. In the end, Dan won the respect of our company leadership and our government customer.

These are just a couple of detailed examples of Dan's character in action and are typical of how I know Dan to run his life both professionally and personally. I know I can trust him to always do the right thing. I have never known him to be out for any kind of personal gain.  In fact, I was not surprised that Dan had let the other apartment building investors completely off the hook for any accountability (financial or

otherwise) in dealing with the consequences regarding the property after the Principal Investor disclosed the true financial status of the project and subsequently committed suicide.   Dan was left to pick up the pieces by himself.  When I asked Dan about why he didn't go after the other investors to help resolve the situation he told me that "they had suffered enough by losing their entire investment".  But Dan had also lost his entire investment, plus he willingly took on the responsibility of dealing with the aftermath all alone (both financially and with his personal time), letting the other investors completely off the hook for any accountability.  That's the kind of person he is.

I am honored to have Dan as my friend and hope that my input will help provide insight into his true character.

Jim Bloom
13685 N Forked Trail
Prescott, AZ 86305
801-450-9181